**Joseph H. SOLIEN, Regional Director of Region 14 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS, LOCAL UNION NO. 2, AFL–CIO, Respondent.**

No. 88–2461C(6).

United States District Court,
E.D. Missouri, E.D.

Jan. 12, 1989.

Joseph H. Solien, Regional Director, Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Joseph E. Desio, Assoc. Gen. Counsel, Leo D. Dollard, Regional Atty., Michael T. Jamison, N.L.R.B., St. Louis, Mo., for petitioner.

Jeffrey Hartnett, Bartley, Goffstein, Bollato & Lange, St. Louis, Mo., for respondent.

## MEMORANDUM AND ORDER

GUNN, District Judge.

This matter is before the Court on the petition of the Regional Director of the National Labor Relations Board ("the Board") for a preliminary injunction, pending the Board's final decision on the merits, pursuant to Section 10($l$) of the National Labor Relations Act, 29 U.S.C. § 160($l$) (1982) ("the Act").[1] The Board alleges that

---

1. Section 10($l$), 29 U.S.C. § 160($l$), provides in relevant part:

(1) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all

other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has oc-

picketing conducted by the United Union of Roofers, Waterproofers and Allied Workers, Local Union No. 2, AFL–CIO ("the Union") violated and continues to violate Section 8(b)(7)(C) of the Act, 29 U.S.C. § 158(b)(7)(C) (1982).[2]

On December 30, 1988, a hearing was held before this court. Having considered the pleadings, the proposed testimony of the witnesses, the documents in evidence, and the parties' stipulation as to the facts, and being fully advised in the premises, this court makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. Petitioner is Regional Director of Region 14 of the Board, an agency of the United States, and filed the petition for and on behalf of the Board.

2. Pursuant to the provisions of the Act, on or about October 11 and December 12, 1988, the McCarthy Company ("McCarthy") and South Side Roofing Co., Inc. ("South Side"), respectively, filed charges with the Board, alleging that the Union has been and is engaging in unfair labor practices within the meaning of Section 8(b)(7)(C) of the Act.

3. The aforesaid charges were referred to the petitioner as Regional Director of Region 14 of the Board. Based upon said charges, petitioner issued complaints and notices of hearing pursuant to Section 10(b) of the Act, and Section 102.15 of the Board's Rules and Regulations, Series 8, as amended.

4. The Union, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rate of pay, hours of employment or conditions of work.

5. The Union maintains its principal office at 1547 South Broadway, St. Louis, Missouri, and at all times material here, has been and is engaged within this judicial district in transacting business and in promoting and protecting the interests of the employee members of the Union.

6. Stephenson Roofing Company ("Stephenson"), a corporation organized under the laws of the State of Missouri with its principal offices located at 11830 Dorsett, Maryland Heights, Missouri, and various job sites located in the St. Louis metropolitan area, including job sites located at 12595 Olive Street Road (here called "West Park II"), 150 North Meramec, and 10750 Baur Avenue in St. Louis, Missouri, is en-

curred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law.... In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 158(b)(4)(D) of this title.

**2.** Section 8(b)(7)(C), 29 U.S.C. § 158(b)(7)(C), reads:

(b) It shall be an unfair labor practice for a labor organization or its agents—

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided,* That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further,* That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

gaged within this judicial district in business, primarily in the building and construction industry as a roofing contractor engaged in the installation of commercial roofing systems. During the past 12 months, which period is representative of its operations, Stephenson purchased and received materials valued in excess of $50,000, which materials were shipped directly to Stephenson's job sites located in the State of Missouri, from suppliers located outside the State of Missouri.

7. Stephenson has been engaged in the installation of roofing systems, since on or about October 10, 1988, at West Park II as a subcontractor to McCarthy, and since November 15, 1988, at 150 North Meramec and 10750 Baur Avenue in St. Louis, Missouri, and at other job sites in the St. Louis metropolitan area.

8. South Side, a corporation organized under the laws of the State of Missouri, with its principal offices located at 290 Hanley Industrial Court, Brentwood, Missouri, and various job sites located in the St. Louis metropolitan area, including a job site located at Cleveland High School at 4352 Louisiana, St. Louis, Missouri ("Cleveland High School"), is engaged within this judicial district in business, primarily in the building and construction industry as a roofing contractor engaged in the installation of commercial roofing systems. During the past 12 months, which period is representative of its operations, South Side purchased and received materials valued in excess of $50,000, which materials were shipped directly to South Side's job sites located in the State of Missouri, from suppliers located outside the State of Missouri.

9. Since December 7, 1988, South Side has been engaged in the installation of roofing systems at Cleveland High School and at other job sites in the St. Louis metropolitan area.

10. The Union is not currently and has never been certified by the Board as the collective-bargaining representative of any of Stephenson's or South Side's employees.

11. The Union has never filed a petition with the Board pursuant to Section 9(c) of the Act seeking to represent any employees of South Side.

12. On May 20, 1988, the Union filed a petition with the Board pursuant to Section 9(c) of the Act to represent the employees of Stephenson. The Union requested withdrawal of that petition on June 13, 1988. Since approval of that withdrawal request on June 15, 1988, no petition has been pending with the Board regarding the employees of Stephenson.

13. The Union was a party to a collective-bargaining agreement wth both Stephenson and South Side which was effective from June 23, 1986 through April 30, 1988. That agreement provided that it would be automatically renewed unless either party notified the other in writing, at least 60 days before the then current expiration date, of a desire to amend or terminate the agreement. Prior to the expiration of that agreement, both Stephenson and South Side notified the Union that they desired to terminate or amend the agreement. (See Resp.Exhs. 1, 2)

14. Negotiations for a contract to succeed the contract which expired April 30, 1988 were conducted between the Union and both South Side and Stephenson. The last negotiating session for such a contract with either South Side or Stephenson was held on May 20, 1988.

15. After April 30, 1988, no collective-bargaining agreement has ever been agreed upon between the Union and either Stephenson or South Side.

16. By letter dated July 15, 1988, South Side withdrew its proposal of May 16, 1988 and made no new proposal for a contract. No negotiating sessions were held, and no contract proposals were made, by either the Union or South Side thereafter.

17. On or about May 2, 1988, the Union commenced a strike against both Stephenson and South Side and commenced picketing the offices of both South Side and Stephenson with "On Strike" signs. That picketing of both South Side and Stephenson continued through the summer of 1988.

18. In mid to late June 1988, the Union commenced picketing both South Side and

Stephenson at their job sites in the metropolitan St. Louis area with "On Strike" signs. That picketing continued until the week of December 19, 1988 when both South Side and Stephenson temporarily ceased work due to the weather and the holidays. The Union picketed the job sites of South Side and Stephenson for more than 30 days after July 15, 1988. The job sites at which the Union picketed Stephenson included West Park II, 150 North Meramec, and 10750 Baur Avenue in St. Louis, Missouri. The job sites at which the Union picketed South Side included Cleveland High School and Powell Symphony Hall in St. Louis, Missouri. All such picketing was with "On Strike" signs.

19. The picketing described above in paragraphs 16 and 17 has been conducted for more than a reasonable period of time without the filing of a petition under Section 9(c) of the Act or a Board election respecting either Stephenson's or South Side's employees.

20. At no time has the Union shown South Side authorization cards, or otherwise claimed to South Side directly that the Union represented a majority of South Side's employees. The Union has never requested that South Side grant it recognition as the majority representative of South Side's employees and South Side never granted such recognition.

21. At no time has the Union shown Stephenson authorization cards, or otherwise claimed to Stephenson directly that the Union represented a majority of Stephenson's employees. The Union has never requested that Stephenson grant it recognition as the majority representative of Stephenson's employees and Stephenson never granted such recognition.

22. Subsequent to the strike in 1988, a majority of the employees who had been employed by both Stephenson and South Side prior to the strike resigned from the Union and returned to work for their respective employers. At the present time, none of the employees working for Stephenson or South Side are members of the Union.

23. The Union and Stephenson have been parties to a series of collective-bargaining agreements from sometime in the late 1940's, the last of which ran from June 23, 1986 until its expiration on April 30, 1988.

24. The Union and South Side have been parties to a series of collective-bargaining agreements from sometime in the late 1960's, the last of which was effective from June 23, 1986 until its expiration on April 30, 1988.

25. Subsequent to the expiration of the collective-bargaining agreement between the Union and Stephenson in 1986, the Union commenced a strike which lasted about two weeks. The strike ended when the Union and Stephenson reached agreement on a new collective-bargaining agreement.

26. Subsequent to the expiration of the collective-bargaining agreement between the Union and South Side in 1986, the Union commenced a strike which lasted about two weeks. The strike ended when the Union and South Side reached agreement on a new collective-bargaining agreement.

27. All of Stephenson's and South Side's employees went out on strike in 1986.

### Conclusions of Law

This court has jurisdiction under Section 10(*l*) of the Act, 29 U.S.C. § 160(*l*). The Union is a labor organization as defined by Sections 2(5), 8(b), and 10(*l*) of the Act.

Unlike proceedings for preliminary injunctive relief under the Federal Rules of Civil Procedure, such proceedings under the Act entail very limited judicial determinations. The Eighth Circuit has described this limited judicial role as a two-step inquiry. First, the court must determine "whether the Board has reasonable cause to believe a violation [of the Act] has occurred." *Sharp v. Omaha Bldg. & Const. Trades Council*, 821 F.2d 516, 517 (8th Cir.1987). In making this determination, "the District Court is not called upon to decide whether an unfair labor practice occurred, but rather, after deferring to the statutory interpretation and rational factu-

al inferences of the Board, the District Court must decide whether there is reasonable cause to believe that an unfair practice occurred." *Hendrix v. Int'l Union of Operating Engineers, Local 571,* 592 F.2d 437, 442 (8th Cir.1979).

Secondly, the district court must decide whether the equitable relief sought is "just and proper." *Hendrix,* 592 F.2d at 443. "In addition to the usual discretionary considerations, the district court must consider whether the statutory purpose of the Section 10(*l*) remedy would be frustrated if injunctive relief was denied." *Id.*

Finally, the district court's finding of reasonable cause will not be disturbed unless clearly erroneous, and its grant of injunctive relief will not be reversed unless it represents an abuse of discretion. *Id. See also, Solien v. Merchants Home Delivery Service,* 557 F.2d 622, 626–27 (8th Cir. 1977).

With these standards in mind, the court turns to the legal issues presented herein. All of the parties agree that resolution of this matter turns on the Union's ability to establish its status as majority representative, pursuant to Section 9(a) of the Act, 29 U.S.C. § 159(a), of South Side and Stephenson employees. Further, the parties agree that the Union has the burden of proving this status. The parties disagree as to what evidence constitutes sufficient proof to establish "Section 9(a)" status.

Section 8(f) of the Act, 29 U.S.C. § 158(f),[3] allows an employer in the construction industry to enter into a collective-bargaining agreement absent the showing of majority representation of employees traditionally required of a union as a prerequisite to collective bargaining by Section 9(a) of the Act 29 U.S.C. § 159(a).[4]

[4] Congress enacted section 8(f) in response to the frequently, and uniquely, temporary nature of construction employment and the consequent difficulties in establishing a union's majority representation of employees. *See N.L.R.B. v. Iron Workers (Higdon Contracting Co.),* 434 U.S. 335, 348–49, 98 S.Ct. 651, 659–60, 54 L.Ed. 2d 586 (1978). Because a section 8(f) agreement can be entered without majority representation, however, the agreements are voluntary as between the Union and

---

3. Section 8(f), 29 U.S.C. § 158(f), reads:

(f) It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) of this section as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later, or (3) such agreement requires the employer to notify such labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment, or (4) such agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area: *Provided,* That nothing in this subsection shall set aside the final proviso to subsection (a)(3) of this section: *Provided further,* That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.

4. Section 9(a), 29 U.S.C. § 159(a), reads:

(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment.

the employer, and picketing to force an employer's adoption of such an agreement is unlawful. *See Local 542, Int'l Union of Operating Engineers (R.S. Noonan)*, 142 NLRB 1132 (1963), *enf'd*, 331 F.2d 99 (3rd Cir.), *cert. denied*, 379 U.S. 889, 85 S.Ct. 161, 13 L.Ed.2d 93 (1964). Until recently disagreement remained concerning what precise rights and duties the parties to a section 8(f) agreement had and as to whether an 8(f) agreement—through the maturation of subsequent business dealings—could be converted into a section 9(a) agreement with the full panoply of union coercion and enforcement rights.

In *John Deklewa & Sons*, 282 NLRB 184 (1987), 124 LRRM 1185, (1987), the Board resolved many of these issues. First, the Board held that section 8(f) agreements cannot be unilaterally voided prior to expiration. On the other hand, the Board rejected the "conversion doctrine," holding that "upon the [8(f)] contract's expiration, the signatory union will enjoy no majority presumption and either party may repudiate the presumption."

In a subsequent decision, the Board further explicated the evidentiary burdens of a party seeking to establish 9(a) status. *J & R Tile, Inc.*, 291 NLRB 144 (December 8, 1988) elaborated upon the *Deklewa* decision as follows:

[I]n light of the legislative history of Section 8(f), and the prevailing practice in the construction industry, a contract in the construction industry will be deemed to be 8(f) unless the party asserting a collective-bargaining relationship under Section 9(a) affirmatively proves that such a relationship exists.

[T]he availability of 8(f) agreements in the construction industry renders ambiguous a union's demand to execute a collective-bargaining agreement. Because of this ambiguity, an employer in the construction industry may not be certain whether a union, in requesting recognition or presenting a collective-bargaining agreement for execution, in seeking an 8(f) or a 9(a) relationship. Further the ambiguity is exacerbated in the context of successive collective-bargaining agreements where the employer had previously established an 8(f) relationship with the Union. We believe, therefore, that to establish voluntary recognition pursuant to Section 9(a) of the Act in the construction industry there must be evidence that the union unequivocally demanded recognition as the employees' 9(a) representative and that the employer unequivocally accepted it as such.

*J & R Tile, Inc.*, 291 NLRB 144, slip op. at 8–9 (December 8, 1988).

■ The Union has presented evidence of strikes in 1986 which purportedly were the catalyst for the last agreements entered into between it and South Side and Stephenson. See Findings of Fact, ¶¶ 24, 25. The court cannot consider evidence of events occurring more than six months prior to the events out of which the Board's pending charges arose where such evidence is a necessary element in finding the charged activities to be unfair labor practices. *Hendrix*, 592 F.2d at 443–44. However, where occurrences within the six-month limitations period may constitute unfair labor practices in and of themselves, earlier activities which may shed light on the character of those occurrences may be considered as evidence. *Hendrix*, 592 F.2d at 444. The Union presented evidence that the 1986 strikes were attended by all the employees of South Side and Stephenson (see Findings of Fact, ¶ 26) and asserts that this evidence is sufficient to establish its 9(a) status. The court disagrees.

■ The Union—as the party with the burden of proving specific 9(a) status—has failed to present evidence either of a *specific* request *for 9(a) recognition*, or of a *specific* grant of such recognition by either employer. Under current Board interpretations of the relevant law, the Union has not met its burden. Therefore, the court finds that the Board has reasonable cause to believe the Union has engaged in unfair labor practices.

■ The court also finds that the equitable relief sought herein is just and proper in order to preserve the status quo pending the Board's resolution of this matter on the merits. Accordingly,

IT IS HEREBY ORDERED that the Union, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them be and are enjoined from picketing or causing to be picketed, or threatening to picket or cause to be picketed, South Side Roofing Co. or Stephenson Roofing Co. at or in the vicinity of 11830 Dorsett, Maryland Heights, Missouri; 12595 Olive Street Road, St. Louis, Missouri; 150 North Meramec, St. Louis, Missouri; 10750 Baur Avenue, St. Louis, Missouri; 290 Hanley Industrial Court, Brentwood, Missouri; Cleveland High School, 4352 Louisiana, St. Louis, Missouri; and any other of the companies' job sites in the St. Louis metropolitan area, pending the final disposition of the matters involved herein by the National Labor Relations Board.